## CHRISTINA MACKLANBURG and Another v. C. D. GRIFFITH and Another.[1]

June 30, 1911.

Nos. 17,177—(201).

**Trust — findings sustained by evidence.**
    The findings of the trial court to the effect that a certain oral agreement

[1] Reported in 131 N. W. 1063.

was made between plaintiffs and defendants, and that this agreement, together with certain writings, created defendants trustees for plaintiffs in the redemption of land from a foreclosure sale, and in the sale of such land, are sustained by the evidence.

**Parol trust.**

Such parol agreement and writings did not create a parol trust in land, in violation of the statutes of North Dakota.

**Redemption from foreclosure — refusal to account.**

Where a trustee is authorized by the trust agreement to redeem land from a foreclosure sale, to sell such land, and to retain from the proceeds of sale the amount paid for the redemption, and other sums, paying the balance to the cestui que trust, and such trustee makes the redemption, and makes a sale of the land, but refuses to account to the cestui que trust, the measure of damages is the amount of such balance of the proceeds, with interest from the time of the sale.

Action in the district court for Brown county for an accounting, for the payment of moneys found to be due upon such accounting and for a termination of the trust set up in the complaint. The facts are stated in the opinion. The answer put in issue the allegations of the complaint and set up laches of plaintiffs as a defense. The reply was a general denial. The case was tried before Olsen, J., who found that defendants, after receiving the quitclaim deed mentioned in the opinion, held the title in trust for the plaintiffs, and as conclusion of law ordered judgment in their favor for $9,-395.15. From the judgment entered pursuant to the findings, defendants appealed. Remanded with directions to modify the judgment in accordance with the opinion.

*Somerville & Hauser* and *O'Brien, Young & Stone,* for appellants.
*Einar Hoidale* and *Somsen & Dempsey,* for respondents.

BUNN, J.

Plaintiffs are husband and wife, and in 1903 and prior thereto resided at Echo, Minnesota, where plaintiff R. L. Macklanburg was engaged in the hardware business, owning a store building, a stock of goods, and certain lots in the village. Defendants were bankers at Sleepy Eye and at Echo. Macklanburg was in 1902 indebted to defendants for money borrowed in the sum of $2,467.20, and on

July 7, 1902, gave defendants his note for that sum due in ninety days, with ten per cent. interest. This note was never paid.

On January 26, 1903, Macklanburg made a contract with W. H. Gary, whereby he agreed to trade his store, stock of merchandise, and other lots in Echo, for a section of land in North Dakota owned by Gary, subject to a mortgage for $6,120 held by one William Weinberger; Gary to pay, in addition to the land, about $3,500 in cash. This trade was closed February 26, 1903, by a written contract between Macklanburg and Gary; but the deed of the section of land was made to Macklanburg's wife, the plaintiff Christina Macklanburg. At the time this deed was delivered, Macklanburg owed defendants as before stated, owed a debt of $1,000 to the Deere & Webber Company, and other debts. Shortly thereafter Macklanburg moved to Oklahoma, leaving his indebtedness unpaid.

December 9, 1903, defendants commenced an action against Macklanburg in Ransom county, North Dakota, on the note before mentioned, and caused a writ of attachment to be levied on the section of land. Soon afterwards Deere & Webber Company commenced an action against Macklanburg, and caused a second attachment to be levied on the land. Before either of these attachments were levied, but after Macklanburg went to Oklahoma, William Weinberger commenced foreclosure proceedings on his mortgage, which resulted in a foreclosure sale of the section of land on December 19, 1903, for the sum of $6,787.17. Defendants procured judgment in their action on March 1, 1904, and on April 8, 1904, caused the land to be sold on execution under this judgment for $2,641.80. Defendants purchased the land on this sale, and a certificate of sale was duly issued to them.

January 9, 1904, which was after the attachments had been levied, and after the foreclosure sale under the Weinberger mortgage, defendants sent F. W. Somerfeld, who was cashier of their bank at Echo, to Kingfisher, Oklahoma, with instructions, as they claim, to collect their note from Macklanburg, or to get from him certain collateral notes which had been given as security. Somerfeld went to Kingfisher, saw Macklanburg, and was unsuccessful in getting either money or the collateral notes. Somerfeld suggested that the Mack-

lanburgs give defendants a quitclaim deed for the purpose of securing their claim. This suggestion was agreed to, and the deed was executed and delivered to Somerfeld. He delivered to the Macklanburgs a writing which acknowledged the receipt of the deed, to be held as collateral security to the debt due defendants. Somerfeld returned to Echo, and delivered the deed and receipt to defendants, who took the papers without objection, and shortly thereafter caused the deed to be recorded. Afterwards, as before stated, they proceeded with their attachment suit, obtained judgment, levied execution, and bid in the land on the execution sale. At this time the situation was as follows: The first lien on the section of land was the Weinberger mortgage or certificate of foreclosure sale, the second lien was defendant's execution sale on their judgment, the third lien was the Deere & Webber attachment, and the fourth lien was the quitclaim deed given to defendants as security.

February 29, 1904, defendants purchased from Weinberger his certificate of foreclosure sale, paying therefor the full amount of the sale, with interest. They caused the certificate to be assigned to one Solomon A. Smith. On December 6, 1904, they redeemed from this foreclosure sale, on their right under their certificate of execution sale on their judgment against Macklanburg. A certificate of redemption was duly issued to defendants. In June, 1905, defendants sold the land to one Adams for the sum of $15,200, which sum included the crops for that year. This sale was made without notice to the Macklanburgs; defendants claiming to be the owners of the land, and retaining the money received.

This action was brought for an accounting on the theory that defendants, in making the redemption and sale, were acting as trustees for plaintiffs, and were bound to account for the property received by them, or its value, in excess of the amount of their claim and the amounts paid for the redemption and certain other items. Defendants claimed that, in redeeming from the foreclosure sale and in selling the property, they were not acting as trustees for plaintiffs, but in their own right.

The principal question of fact at the trial was as to an alleged oral agreement between plaintiffs and Somerfeld, representing de-

fendants, at the time plaintiffs gave the quitclaim deed as security for defendants' claim. Plaintiffs testified that it was orally agreed that defendants would redeem from the foreclosure sale, sell the land at a price that was to be approved by Mrs. Macklanburg, pay themselves out of the proceeds, and pay the balance to Mrs. Macklanburg. Somerfeld denied any such agreement.

March 10, 1904, two months after the quitclaim deed was given, and ten days after defendants had purchased the Weinberger certificate of sale, they wrote Macklanburg that they had purchased the foreclosure certificate, referred to insurance and taxes that would have to be paid for, and said: "All that we have done in this matter has been for our interest, as well as yours also, and we have no other reason for doing what we have [done], except to protect ourselves and you at the same time, and the arrangements made between you and Mr. Somerfeld regarding this matter are certainly all right." March 18, 1904, defendants wrote, asking Macklanburg to send money to pay for seed wheat for the crop to be put in on the land, and to pay the taxes, or, if he wished them to furnish the seed, to send an assignment of his lease with the tenant of the land, and on March 25, 1904, wrote again to the same effect. March 31, 1904, defendants wrote Macklanburg: "Clear title cannot be given for the land for a year, on account of attachments after ours, so will have to wait a year before there is use trying to sell land. Title then can be given." June 24, 1904, defendant Griffiths wrote: "I do not know whether it will be possible to sell the land at any greater figure than I mentioned to you. * * * I have been asking $25 per acre for the land and letting them have the crop, and my advice would be, if we can get that price, to let it go. * * * I will make the offer to them in this way. If it does not meet with your approval, you had better wire me." Macklanburg had written defendants in March, saying: "We will take $24 [per acre] to get this matter straightened up. Try to find a buyer for the same at $25 per acre, and you make one dollar per acre." June 16 Macklanburg wrote, acknowledging receipt of a telegram from defendants, stating that they had an offer of $15,000 for the land, and told defendants that, if they could not get $24 per acre, they had better take the $15,000 offer.

Plaintiffs were not informed by defendants of the sale to Adams, and did not know of it until December, 1905. December 20, 1905, defendants wrote to plaintiff Christina Macklanburg: "Your favor of the 3d inst. received. I do not understand that we have any report to make to you. We levied on your land in North Dakota, and redeemed same from the foreclosure of the mortgage by our right as judgment creditors, and obtained title to the land in this way. You could have redeemed, if you had seen fit to do so, and obtained title; but, as you did not, we acquired title to the land, and we have sold same."

There was much other testimony, but we have stated enough to show the material facts bearing upon the questions to be decided. The trial court found that the oral agreement claimed by plaintiffs to have been made with defendants, through Somerfeld, on January 9, 1904, was actually made; that plaintiffs relied on such agreement, and were induced thereby to give the quitclaim deed; that defendants thereafter held the title to said land in trust for the plaintiffs under said quitclaim deed; that the redemption from the foreclosure sale in December, 1904, was made without the knowledge or consent of plaintiffs, and with the intent to defraud plaintiffs of their equity in the land; and that after this redemption defendants claimed to be the sole owners of the land, refused to recognize plaintiffs' rights therein, and refused to account to plaintiffs; that the sale in June, 1905, was made without plaintiffs' knowledge or consent, and with intent to defraud and deprive them of their equity in the land; that the value of the land at the time of the sale was $15,200 (the sale price), and its value at the time of the commencement of the action and at the time of the trial was $22,400; that defendants received from the 1904 crop, September 29, 1904, $1,101.12 net; that they had refused to account to plaintiff for said crop, or for plaintiffs' equity in the land. The court charged defendants with the value of the land at the time of the commencement of the action, $22,400, with the amount received for the 1904 crop and interest, in all amounting to $23,907.52, credited them with the amount paid for the foreclosure certificate, with interest, the amount of their claim on the execution sale, with interest, and certain items paid by de-

fendants for taxes, insurance, seed wheat, and expenses of trips to the land, amounting in all to $14,512.37, leaving a balance due from defendants to plaintiffs of $9,395.15, for which sum judgment was ordered. Judgment was entered on the findings, and defendants appealed from such judgment.

Treating the assignments of error as sufficient to raise the main questions argued by counsel, these questions are: (1) Is the finding that defendants after the quitclaim deed was delivered to them, held the title to the land in trust for plaintiffs, sustained by the evidence? (2) If defendants were trustees for plaintiffs, what is the measure of relief to be granted for their breach of trust?

1. Defendants contend that the oral agreement between plaintiffs and Somerfeld was not binding upon them, because, first, Somerfeld had no authority to make it; second, there was no consideration. We can sustain neither of these contentions. Somerfeld was the cashier of defendants' bank at Echo, the very man with whom Macklanburg had his dealings in his prior business with defendants. Defendants accepted the quitclaim deed, and the receipt showing it was given as security. The consideration for the agreement is plain. While defendants had attached the land, it then stood in Mrs. Macklanburg's name, and the deed made it unnecessary for defendant to prove that it was Macklanburg's land, though in his wife's name.

Defendants argue that the evidence shows a parol trust in land, contrary to the statutes of North Dakota, where the land was situated, and that violation of such an illegal trust cannot be made the basis of an action at law or in equity. But the oral evidence merely tended to show the conditions upon which the quitclaim deed was given and held. It was not objected to, and must, we think, be considered simply as explaining the receipt, supplying conditions not inconsistent with the terms of that instrument, but explaining them. It was not the parol agreement that constitutes the trust, but the deed, and the receipt as explained by the parol agreement. The receipt was incomplete. It did not purport to state the details of the transaction. It did not say when or how plaintiffs might use the security to pay the debt, whether they might foreclose at once or at any time in the future, or what should be done with the proceeds.

The deed, receipt, and parol agreement, construed together, gave valuable rights to plaintiffs, and reserved to defendants only what they were entitled to. It was a reasonable and natural arrangement, and we are not able to hold that a parol trust in lands was thereby constituted.

The subsequent conduct of the parties, the letters of defendants referring to the "arrangements made between you and Mr. Somerfeld regarding this matter," stating that defendants were acting for themselves and for plaintiffs in purchasing the mortgage foreclosure certificate, and requesting money for taxes and seed wheat, indicate quite clearly that defendants were not dealing with plaintiffs at arm's length, but that a confidential relation existed. Defendants, until after they had redeemed from the foreclosure sale, discussed by letter and telegram the matter of price at which a sale should be made, and informed plaintiffs that a sale could not be made for a year. This is all consistent with the relation of trustee and cestui que trust, but is hardly consistent with defendants' present claim that they were acting throughout for themselves only. It is true that defendants might have redeemed, and might have secured title to the land under their redemption, without the quitclaim deed; but this is not controlling. If plaintiffs relied on defendants redeeming under their agreement, and the evidence is that they did, it is entirely reasonable to say that they failed to exercise their own right to redeem because of their reliance upon defendants redeeming for them. Had it not been for the quitclaim deed and defendants' agreement, plaintiffs would have had a clear right to redeem, while defendants' right would have been clouded by the question of the validity of their attachment. We hold that the finding of the trial court that defendants were trustees for plaintiffs in their dealings with the land is amply sustained by the evidence.

2. That plaintiffs are entitled to relief follows. Defendants, in violation of their trust, sold the land without notice to plaintiffs, and claimed the proceeds as their own. The question is as to the measure of that relief. The trial court held that defendants should be charged with the value of the land at the time of the trial, applying the rule that, where a trustee fraudulently converts or disposes of the trust property for his own benefit, he may be required to replace

the property, or purchase property of equal value to replace it, in order to place the cestui que trust in the same position as if no sale had been made. This is the correct rule, when the facts arise that warrant its application; but a consideration of the evidence in this case leads us to the conclusion that it is not applicable here.

Under the terms of the trust agreement defendants were to make redemption from the mortgage sale, and were to sell the land at a price that was satisfactory to Mrs. Macklanburg. They did not violate that agreement when they made the redemption, although they made it under their execution sale, and not under the quitclaim deed. It was made for plaintiffs, as well as for themselves. Their breach of trust was in refusing to turn over to plaintiffs the proceeds of the sale to Adams, after deducting what was owing themselves. The trial court found that the price received was the actual value of the land at the time. While defendants did not ask or obtain plaintiffs' consent to this sale, it appears that they had agreed to a sale at the same or a less price before, and presumably they would have agreed to this sale, considering that it was at the actual value. The rule of damages is that plaintiffs should be put in the same position as if defendants had performed their trust.

It is not a case of wrongful sale without authority, but a case of a sale authorized by the cestui que trust, but where the trustee has failed to account for the moneys received. By compelling defendants to pay the balance of the proceeds of the sale, with interest, equity is done, and the trust is performed. Plaintiffs are in the same position as they would have been if defendants had done as they agreed, and this is true, also, of defendants.

We think the trial court was correct in allowing defendants but six per cent. interest on the credits allowed them, and we see no error in the disallowance of other items for expenses, services, value of the crop.

The findings make a new trial unnecessary. The judgment should be modified by charging defendants with the price received from the sale, with interest, instead of the value of the land at the time of the commencement of the action, or at the time of the trial.

Remanded, with directions to modify the judgment in accordance with this opinion.